UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| TRAVIS EMORY CORRELL,<br><br>           Petitioner,<br><br>    vs.<br><br>THE UNITED STATES OF AMERICA, ERIC HOLDER, ATTORNEY GENERAL; CHARLES E. SAMUELSJR., DIRECTOR, FEDERAL BUREAU OF PRISONS; PAUL M. LAIRD, REGIONAL DIRECTOR, FEDERAL BUREAU OF PRISONS; AND W. SCOTT WILLIS, WARDEN, FEDERAL PRISON CAMP YANKTON;<br><br>           Respondents. | 4:14-CV-04158-LLP<br><br>REPORT AND RECOMMENDATION |

**INTRODUCTION**

Petitioner, Travis Emory Correll, ("Correll") an inmate who is incarcerated at the Yankton Federal Prison Camp in Yankton, South Dakota, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 with a supporting brief and exhibits (Docket 1). The Respondents have filed a motion to dismiss (Docket 11), a supporting brief (Docket 9) and the declaration of Angela Buege (Docket 10). Correll has filed a reply (Docket 13) to the Respondents' motion to dismiss along with a supporting brief (Docket 12). The matter is now ripe for a decision.

1

The Court has taken judicial notice of the file in Correll's underlying criminal conviction from the United States District Court, Northern District of Georgia, United States v. Correll, 1:07 CR-365.  See, Hood v. United States, 152 F.2d 431 (8th Cir. 1946) (federal district court may take judicial notice of proceedings from another federal district court); Matter of Phillips, 593 F.2d 356 (8th Cir. 1979) (proper for federal court to take judicial notice of state court pleadings); Green v. White, 616 F.2d 1054 (8th Cir. 1980) (court of appeals may take judicial notice of district court filings).

## JURISDICTION

The pending matter was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Judge Schreier's Order dated October 16, 2014.

## FACTUAL[1] AND PROCEDURAL HISTORY

Correll was charged by an information on October 31, 2007 with wire fraud in violation of 18 U.S.C. § 1343 and 2.  The information charged that Correll operated an investment program ("Horizon") which was nothing more than a ponzi scheme.  Correll solicited in excess of one hundred million dollars from individual investors, inducing them to invest their money with promises of high monthly returns.  Correll further represented to investors that their principal investments would be used solely for the purpose of funding a foreign

---

[1] The factual history is gleaned from the pleadings contained in the underlying criminal file, Correll's § 2241 petition, and its attachments.   See, United States v. Correll 1:07 CR-365 (United States District Court, Northern District of Georgia) and Docket 1 in this case.

2

bank investment program.  In reality, Correll never invested any money with a foreign bank investment program, but instead used investors' money to pay his own salary and expenses, and to pay promised monthly returns to earlier investors.

Correll entered into a plea agreement, and a judgment of conviction was entered on March 24, 2008.  Correll was sentenced to incarceration for a term of 144 months, restitution in the amount of $29,164,934.98, and supervised release for a period of three years.  Correll did not file a direct appeal.  On June 9, 2009, pursuant to the government's Rule 35 motion, the Honorable Orinda D. Evans, United States District Judge for the Northern District of Georgia, entered an Order reducing Correll's sentence to 108 months.  According to the declaration of Angelea Buege (Docket 10 in this action), Correll's current projected release date is June 17, 2016 via Good Conduct Time (GCT) release.

On October 20, 2014, Correll filed this writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the District of South Dakota, Southern Division.  He simultaneously filed an identical petition which he styled as a civil rights lawsuit pursuant to 42 U.S.C. § 1983.  See, Correll v. United States of America, Eric Holder, et. al. Civ. No. 14-4168, United States District Court, District of South Dakota, Southern Division.  In both actions, Correll claims the Respondents are violating the Equal Protection Clause by enforcing 18 U.S.C. § 3621(e)(2)(B), which gives federal inmates who have a history of substance abuse the opportunity to qualify for early release by

3

undergoing treatment but does not afford the same opportunity to federal inmates who do not have a history of substance abuse.

  In his petition, Correll explains he is a non-violent offender who has no history of substance abuse.  Docket 1, p. 1.  He has participated in extensive reentry educational programming and as a result, has earned a college degree.  Docket 1, ¶ 17.  See also, Docket 1-2, p. 2-3 (copy of Correll's Bachelor of Arts degree and transcripts from Mount Marty College).  He further explains that non-violent inmates who properly demonstrate a history of substance abuse pursuant to 18 U.S.C. § 3621(e)(2)(B) are eligible to participate in reentry programming via the Residential Drug Abuse Program "(RDAP")  and as such, may ultimately  qualify for the extra incentive of early release.  Docket 1, ¶¶ 14-15.  Correll, on the other hand, although he has invested a comparable amount of time into reentry programming through his college course work will not be offered early release because his reentry programming, unlike RDAP, does not offer the extra incentive of early release.  Docket 1, ¶¶ 14-17.

  Correll asks the court to award him "a one year reduction in his statutory sentence for his successful completion of reentry programming, just like the one year reduction in sentence that is awarded to those who complete 500 hours of reentry programming through the RDAP."  Docket 1, ¶ 18.

4

## DISCUSSION

**A.    Correll's Petition is Properly Designated as a Habeas Corpus Petition Pursuant to 28 U.S.C. § 2241**

Correll does not claim a defect in his underlying conviction.  Instead, he argues the application of 18 U.S.C. § 3621(e)(2)(B) results in the wrongful denial of a one-year reduction in his sentence.  Accordingly, he attacks the manner in which his sentence is executed rather than the legality of his conviction.  "[A]n attack on the manner in which a sentence is executed, as distinguished from its legality, may be cognizable in a habeas corpus petition under 28 U.S.C. § 2241."  United States v. Knight, 638 F.2d 46, 47 (8th Cir. 1981).  A "writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody."  Braden v. 30th Judicial Circuit Court, 410 U.S. 484, 494-95, (1973).  A court may not issue a writ of habeas corpus unless it has jurisdiction over the petitioner's custodian**.**  Id.

Because he challenges the manner in which his sentence is being carried out, Correll's petition is properly designated as a § 2241 petition.  Knight, 638 F.2d at 47.  Because he is currently incarcerated at the Yankton Federal Prison Camp within the District of South Dakota, this court has jurisdiction over Correll's custodian (Willis). Braden, 410 U.S. at 494-95, (1973).

**B.    Overview of the RDAP**

The Residential Drug Abuse Program ("RDAP") was created by the Bureau of Prisons ("BOP") pursuant to Congressional mandate in the Violent Crime Control Law Enforcement Act ("VCCLEA") of 1994.  Congress directed the BOP to "make available appropriate substance abuse treatment for each prisoner the [BOP] determines has a treatable condition of substance addiction or abuse."  18 U.S.C. § 3621(b).  Associated regulations require the inmate to complete and pass a drug abuse education course.   28 C.F.R. § 550.51.

The BOP must provide residential substance abuse treatment for all eligible prisoners, subject to available funding.  18 U.S.C. § 3621(e)(1).  A prisoner is "eligible" for RDAP if he is "determined by the [BOP] to have a substance abuse problem," and he is "willing to participate in a residential treatment program."  18 U.S.C. § 3621(e)(5)(B)(i) and (ii).  The BOP may, as an incentive for successful completion of RDAP, reduce the inmate's sentence by up to one year.  18 U.S.C. § 3621(e)(2).

> Drug treatment studies for in prison populations find that when programs are well-designed, carefully implemented, and utilize effective practices they:
>
> - Reduce relapse
> - Reduce criminality
> - Reduce recidivism
> - Reduce inmate misconduct
> - Increase the level of the offender's stake in societal norms
> - Increase the levels of education and employment upon return to the community

6

- Improve health and mental health symptoms and conditions
- Improve relationships

See, www.bop.gov/inmates/custody_and_care/substance_abuse_treatment.jsp

The BOP's 2014 Program Directory indicates that for up to three years post release, male participants in RDAP are 16 percent less likely to recidivate and 15 percent less likely to relapse than similarly situated inmates who do not participate.[2]

### C.     No Constitutional Right To Early Release

It is well established that a convicted person has no general constitutional right to be released before the expiration of his prison term. Greenholtz v. Inmates of Neb. Penal and Correctional Complex, 442 U.S. 1, 7 (1979).  Inmates likewise have no constitutional entitlement to participate in federal rehabilitative programs.  Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976). It is just as well established that even inmates who are unquestionably qualified to and do participate in RDAP do not have a constitutional right to the early release benefit.  Lopez v. Davis, 531 U.S. 230, 241 (2001); Gianni v. BOP, 405 Fed. Appx. 96, 97 (8th Cir. 2010).  It follows then that Correll, who is not eligible to participate in RDAP, likewise has no constitutional right to early release—through the RDAP program or otherwise.

---

[2] ww.bop.gov/inmates/custody_and_care/docs/BOPNationalProgramCatalog.pdf

**D.      Fundamentals of an Equal Protection Claim**

"The Equal Protection Clause generally requires the government to treat similarly situated people alike." Klinger v. Department of Corrections, 31 F.3d 727, 731 (8th Cir. 1994)(citing City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985)).  "Dissimilar treatment of dissimilarly situated persons does not violate equal protection." Klinger, 31 F.3d at 731 (citation omitted).  The first step in an equal protection case is determining whether the plaintiff has demonstrated different treatment than others similarly situated to him.  Absent a threshold showing that he is similarly situated to those who allegedly received more favorable treatment, the plaintiff does not have a viable equal protection claim.  Id.

If an equal protection claim is not based on a "suspect class" or a fundamental right, it is subject to a rational basis review.  Gilmore v. County of Douglas, State of Nebraska, 406 F.3d 935, 937 (8th Cir. 2005) (citations omitted).  The rational basis review is "the paradigm of judicial restraint. Congress does not violate the right to equal protection merely because the classifications made by its laws are imperfect, or because in practice a classification results in some inequality." Minnesota Senior Federation, Metropolitan Region v. United States, 273 F.3d 805, 808 (8th Cir. 2001) (citations omitted, punctuation altered).

The United States Supreme Court has explained that the rational basis review in an equal protection analysis

> . . . is not a license for courts to judge the wisdom, fairness or logic of legislative choices.  Nor does it authorize the judiciary to sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines.  For these reasons, a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity.  Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.  Further, a legislature that creates these categories need not actually articulate at any time the purpose or rationale supporting its classification.  Instead, a classification must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.
>
> A state, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification.  A legislative choice is not subject to courtroom factfinding and may be based on a rational speculation unsupported by evidence or empirical data.  A statute is presumed constitutional, and the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record.  Finally, courts are compelled under rational basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends.  A classification does not fail rational basis review because it is not made with mathematical nicety or because in practice it results in some inequality . . .

Heller v. Doe, 509 U.S. 312, 319-320 (1993) (citations omitted, punctuation altered).

Finally, "[n]either prisoners nor indigents constitute a suspect class . . ." Murray v. Dosal, 150 F.3d 814, 818 (8th Cir. 1998).  And "[t]he United States Supreme Court has defined fundamental rights as those rights that are 'deeply rooted in this nation's history and tradition.' "  Johnson v. University of Iowa, 431 F.3d 325, 331 (8th Cir. 2005) (citing Moore v. City of East Cleveland, 431

9

U.S. 494, 503 (1977)).  It is with these general principles in mind that the sufficiency of the equal protection claims in Correll's petition have been reviewed.

E.  **Correll Is Not Similarly Situated to Inmates With Substance Abuse Problems and Has Otherwise Failed to Sufficiently State an Equal Protection Claim**

    1.  **Correll is Not Similarly Situated to RDAP-Eligible Inmates**

"Absent a threshold showing that [he] is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim. . .  The similarly situated inquiry focuses on whether the plaintiff [is] similarly situated to another group for purposes of the challenged government action."  Klinger, 31 F.3d at 731 (citation omitted).  Correll asserts he is similarly situated to the federal inmates who have verified substance abuse problems and are allowed to participate in RDAP because both he and they are "non-violent" offenders.  Specifically, Correll asserts § 3621(e)(2)(b) "grants the Director of the Federal Bureau of Prisons (BOP)  both an extraordinary and a discretionary power:  the Director is authorized to reduce the statutory sentence of any nonviolent inmate, by up to one year, if that inmate successfully completes 500 hours of reentry programming via the BOP's Residential Drug Abuse Program (RDAP)."  See, Docket 1 at p.2.  Correll paints the group with which he believes he is similarly situated with too broad a brush.

10

First, while it is true that 18 U.S.C. § 3621(e)(2)(B) grants the director the authority to reduce an inmate's sentence, it does not grant the director the authority to reduce the sentence of <u>any</u> nonviolent inmate.  Rather, the inmate must first successfully complete the RDAP program.  An inmate cannot complete the program unless he first qualifies to participate in RDAP.  In order to qualify for participation in RDAP, the inmate must produce satisfactory documentation of a substance abuse problem.  <u>See</u> 28 C.F.R. § 550.53(b)(1) (explaining a "verifiable substance abuse disorder" is a requirement for enrollment in RDAP).  The term "verifiable substance abuse disorder" is not defined by statute or regulation, but the Bureau of Prisons has defined it in its Program Statement 5330.11 § 2.5.8(d)(2) in relevant part as follows:

- Documentation to support a substance abuse disorder within the 12-month period before the inmate's arrest on his or her current offense.
- Documentation from a probation officer, parole officer, social service professional, etc., who has information that verifies the inmate's problem with substance(s) within the 12-month period before the inmate's arrest on his or her current offense.
- Documentation from a substance abuse treatment provider or medical provider who diagnosed and treated the inmate for a substance abuse disorder within the 12-month period before the inmate's arrest on his or her current offense.
- Multiple convictions (two or more) for Driving under the Influence (DUI) or Driving while Intoxicated (DWI) in the 5 years prior to his or her most recent arrest.

11

The BOP's implementation of the program statement to condition eligibility upon documented proof of a verifiable substance abuse disorder within the twelve month period before arrest on the current offense has been repeatedly held to be a permissible construction of the enabling statute.  See e.g., Standifer v. Ledezma, 653 F.3d 1276, 1280 (10th Cir. 2011); Mora-Meraz v. Thomas, 601 F.3d 933, 942-43 (9th Cir. 2010); Laws v. Barron, 348 F. Supp. 2d 795, 805-806 (E.D. Ky. 2004); Warman v. Philips, 2009 WL 2705833 at * 12,  n.7 (N.D. W.Va. 2009) (collecting cases).   Because he was never eligible for RDAP in the first place, Correll is not similarly situated to those inmates for whose benefit RDAP was created.  Klinger, 31 F.3d at 731 ("The similarly situated inquiry focuses on whether the plaintiff [is] similarly situated to another group for purposes of the challenged government action.").

Correll is not the first federal prisoner to make an equal protection challenge to RDAP because he did not qualify for the program or its one year sentence reduction incentive.   "For purposes of equal protection analysis, Petitioner is similarly situated to other non-drug using inmates, not, as he appears to suggest, the inmate population as a whole.  . . . Petitioner is not being treated differently from other non-drug using inmates, who are, like him, ineligible for the sentence reduction pursuant to RDAP."  Phillips v. United States, 2010 WL 3910059 at *3 (S.D. Tex. Sept. 8, 2010) (citations omitted). See also, Workman v. Gutierrez, 2007 WL 3088086 (N.D. W.Va., Oct. 22, 2007) at *6 (inmate's equal protection claim rejected because he "failed to show that any other inmate lacking adequate documentation of substance abuse has

12

been admitted to the program and granted a one-year sentence reduction . . ."); Sowell v. Chandler, 2014 WL 1794854 at *4 (N.D. Tex. May 6, 2014) (same).

Because he is not similarly situated to the inmates for whom Congress created the RDAP program, Correll has not made the threshold showing required for a viable equal protection claim. Klinger, 31 F.3d at 731. Even if the equal protection analysis were to proceed, however, Correll would not prevail.

    **2.    RDAP Survives Rational Basis Review**

As explained above, inmates are not a suspect class, and have no constitutional or fundamental right to early release. Murray, 150 F.3d at 818; Greenholtz, 442 U.S. at 7. Even if Correll could show he was similarly situated, therefore, his equal protection claim would be subject to a rational basis review. Gilmore, 406 F.3d at 937.

In his brief, Correll asserts the RDAP's early release incentive for inmates who complete substance abuse programming but not for inmates who complete other types of programming is not rational. In support of this argument, Correll explains other types of pre-release programming (such as his college courses) result in much lower recidivism rates than the RDAP program. See Correll's brief, Docket 1 at p.14 (explaining inmates who earn their bachelor's degrees while in prison have a recidivism rate of 5.6 percent, while inmates who complete RDAP have a recidivism rate of 44.3 percent.) See also, John H. Esperian, The Effect of Prison Education Programs on Recidivism, 61(4) THE JOURNAL OF CORRECTIONAL EDUCATION, December 2010, at 324; Docket 1-5 at p.

13

10 (effect of earning a college degree while incarcerated on recidivism) and <u>Triad Drug Treatment Evaluation Project Final Report of Three Year Outcomes</u>: <u>Part I</u>: Executive Summary, p.3 (Docket 1-6 at p. 11). (explaining inmates who complete RDAP have a 44.3 percent rate of recidivism).

      Correll states "[s]imply put, § 3621(e)(2)(B)'s classification scheme should not survive the plaintiff's equal protection challenge because its functionality does not have a rational connection to the government's stated objective: lowering rates of recidivism." Docket 1 at p. 14. Again, however, Correll paints with too broad a brush. Congress' purpose when it created RDAP was not to reduce recidivism in general, but to reduce recidivism *among inmates with substance abuse problems* by providing them with substance abuse treatment. See, H.R. Rep. No. 103-320, at 3-4. (1993). The House of Representatives Report explained that "substance abuse treatment for prison inmates is a powerful tool for reducing recidivism." *Id.* at p. 3. It further found that "[t]he link between substance abuse and crime is well established. Drug addiction can increase an offender's rate of predatory criminal activity by 800 percent. . . Substance abuse also is a major cause of the tremendous growth in the Federal prison population over the past decade, and far too few Federal inmates are receiving treatment for substance abuse. Offenders with substance abuse problems also have an extraordinarily high rate of recidivism. It is the Committee's belief that releasing an inmate into the community without treating his or her substance abuse problem while an inmate is in custody is to virtually guarantee future crime . . ." <u>Id</u>. at p. 3-4. The stated goal of RDAP,

then, was to reduce what Congress recognized was an "extraordinarily high" rate of recidivism among substance abusers.  According to the documentation provided by Correll, RDAP has accomplished that goal.  See, Triad Drug Treatment Evaluation Project Final Report of Three Year Outcomes*:*  Part I*:*  Executive Summary, p.3 (Docket 1-6, p.11). (52.5 percent who did not complete RDAP were re-arrested within three years, while 44.3 percent who did complete RDAP were re-arrested within three years).

Congress recognized that substance abusers have an "extraordinarily high" rate of recidivism.  H.R. Rep. No. 103-320, at 4. (1993). RDAP reduces that rate from 52.5 percent to 44.3 percent.  Triad Drug Treatment Evaluation Project Final Report of Three Year Outcomes*:*  Part I*:*  Executive Summary, p.3 (Docket 1-6, p.11).  That RDAP does not reduce the rate of recidivism among substance abusers to the same rate of recidivism achieved by inmates who earn a bachelor's degree while incarcerated, however, does not render RDAP irrational.  "A classification does not fail rational basis review because it is not made with mathematical nicety or because in practice it results in some inequality . . ." Heller*,* 509 U.S. at 319-320. (citations omitted, punctuation altered).  For all of these reasons, Cordell's equal protection challenge to RDAP fails.

## F.     Review of Correll's Claim is Precluded by 18 U.S.C. § 3625

In Reeb v. Thomas, 636 F.3d 1224 (9th Cir. 2011) the Ninth Circuit explained the judicial review provisions of the Administrative Procedure Act

15

>do not apply to any determination, decision, or order made pursuant to 18 U.S.C. §§3621-3624. The BOP has authority to manage inmate drug treatment programs, including RDAP, by virtue of 18 U.S.C. §3621. To find that prisoners can bring habeas petitions under 28 U.S.C. § 2241 to challenge the BOP's discretionary determinations made pursuant to 18 U.S.C. § 3621 would be inconsistent with the language of 18 U.S.C. § 3625.[3]

Reeb, 636 F.3d at 1227. Federal courts, therefore, lack jurisdiction to review the BOP's individualized RDAP determinations made pursuant to 18 U.S.C. § 3621. Id. at 1228. Review is available only if the BOP action is contrary to established federal law, violates the Constitution, or exceeds statutory authority. Id. Accord, Gatewood v. T.C. Outlaw, 560 F.3d 843, 846-47, n. 2 (8th Cir. 2009) ("§ 3625 may well preclude judicial review of BOP decisions applying the final rule and program statement to particular inmates."); Martin v. Gerlinski, 133 F.3d 1076, 1079 (8th Cir. 1998) ("Accordingly it is apparent that § 3625 precludes judicial review of agency adjudicative decisions but not of rulemaking decisions."); LeMaster v. Hollingsworth, 2011 WL 3322227 at *6 (D.S.D.) (If there are no legal errors in BOP decision making process that would justify habeas relief, the Court cannot second guess the ultimate decision made by the BOP).

Correll does not (and cannot) contend the BOP exceeded statutory authority of RDAP when it excluded him from RDAP eligibility, because he

---

[3] 18 U.S.C. § 3625 explains that the provisions of the Administrative Procedure Act (sections 554, 555 and 701-706) "do not apply" to any determination, decision or order under 18 U.S.C. §§ 3621-3625.

16

admits he does not have a substance abuse problem.  Rather, Correll asserts RDAP itself violates the Equal Protection clause of Constitution.  Because the court has already determined Correll's equal protection claim cannot survive, however, his claim is unreviewable by this court pursuant to 18 U.S.C. § 3625.

## CONCLUSION and RECOMMENDATION

For the reasons more fully explained above, it is recommended that Correll's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Docket 1) be DENIED and that the Respondents' motion to dismiss (Docket 11) be GRANTED.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Objections must be timely and specific in order to require de novo review by the District Court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

Dated this 13th day of January, 2015.

BY THE COURT:

_____
Veronica L. Duffy
United States Magistrate Judge